EDELEN *vs.* HARDEY's Lessee.——June, 1826.

If evidence is given in the court below, by consent of parties, its legality cannot be questioned in the appellate court.

In an ejectment where the defendant's title to the land sued for, and his only defence was under the supposed will of a former owner, and it appeared that there had been a former ejectment against the defendant, in which the same question was in issue, and in which said supposed will was adjudged to be invalid, and the case on that ground decided against him—*Held,* that he was not thereby concluded from going into evidence to establish the legality of the will.

Where it appeared that the will, under which the defendant claimed title, was signed by the testator, in the presence of the witnesses, but that they, at his request, took it into an adjoining room to attest it, between which and the testator's room there was a plank partition, and after attesting it, it was carried to the testator, and he informed of the attestation, and approved of it—*Held,* that *prima facie,* the will was not legally executed.

It is not essential that a testator should actually see the witnesses to his will sign it, but it is essential that he should be in a situation, whence he could do so, if he desired it.

APPEAL from *Prince George's* County Court.    Ejectment for an undivided third part of a tract of land called *What You Please.*    The defendant, (the appellant,) took general defence, and issue was joined on the plea of not guilty.

1. The plaintiff at the trial read in evidence, with the consent of the defendant, and under an agreement for that purpose entered into between the parties, the certificates of the clerk of the circuit court of the District of *Columbia* for *Washington* county, given on the 1st of September 1820, not under the seal of his office, stating "that the papers filed in the ejectment suit of *Sarah Coombs, Martenannon Jenkins* and *Priscilla Hardey's* lessee, against *Francis Jenkins,* which was tried by a jury at June term 1812, in the circuit court of the District of *Columbia* for the county aforesaid, were destroyed by the enemy in the capitol in August 1814; that there is no record of the said suit, and nothing remaining in his office in relation thereto, except the docket entries, and the entry in the minute book, which can be found, after a diligent search." The said docket entries of June term 1811, shew, that an ejectment was brought—a declaration filed—lease, entry and ouster confessed —not guilty pleaded—issue joined.—That a jury was sworn, and a special verdict found; and that on the special verdict a judgment was rendered for the plaintiff at December term 1812. The entries taken from the minute books made on the trial of said action, state the names of the judges of the court who were present, and of the jurors who were sworn to try the issue, amongst whom was *John J. Stull.*    That a bill of exceptions was taken by the plaintiff, and that the jury found a special verdict.    The plaintiff also read in evidence, with the consent of the defendant, under the agreement aforesaid, the certificate of the Honourable *William Cranch,* chief judge of the said circuit court, giving a copy of the whole of his notes taken on the trial of the above mentioned cause, stating it to have been an action of ejectment for lot No. 3, in square No. —, in the city of *Washington;* that "plaintiffs are heirs at law of *Thomas Jenkins,* who died seized.    Defendant is his devisee. The will was executed by the testator in the presence of the subscribing witnesses, when he requested them to go into the

other room to subscribe their names, as he wished to be alone for a few minutes. They did so. Mr. *Matthews* returned to his room after they had subscribed, and read the will again to the testator, and told him the witnesses had subscribed. He replied *it is well*, and seemed satisfied. The rooms were separated by a wooden partition, &c. &c. See bill of exceptions." He then gives a sketch of the arguments of the counsel, the defendants' counsel contending, "that the copy of the will and probat should go the jury as evidence without any further proof;" and the plaintiff's counsel contending, "that it was not a bar to the descent under the circumstances stated in the bill of exceptions, it not having been subscribed by the witnesses in the presence of the testator. The court refused to instruct the jury that it was not a bar; but told them that it was not a bar to the plaintiff's right of recovery, unless they should be satisfied by the evidence that it was subscribed by the witnesses in the *presence* of the testator, leaving the whole evidence to the consideration of the jury." The plaintiff then produced as a witness *John J. Stull*, one of the jurors named as before stated in the extract from the minute book, who gave evidence that he was one of the jurors who tried the said cause, and that he remembered the only fact disputed by the parties before the jury was, whether or not the witnesses to the will subscribed their names thereto in the presence of the testator. The evidence was, that the testator, then ill, signed the will in the presence of the witnesses, and then, before they attested it, desired them to leave the room for a short time, which they did, and went into an adjoining room, through a passage, separated by a plank partition from the room in which the testator lay; that there was no direct communication between these rooms, nor could the testator see them sign the will in that room, from the room in which he lay; that they there signed the will, which was then, by the Reverend *William Matthews*, taken into him; that a special verdict was found by the jury, stating the above facts, as nearly as the witness can recollect. Witness recollects perfectly, that the opinion of the jury was, that the testator, at the time the witnesses subscribed the will, could not see them. On the preceding statement the plaintiff prayed the opinion of the court, and their instruction to the jury, that the

defendant was precluded from going into evidence to prove the execution of the will.    This opinion the Court, [*Johnson,* Ch. J. and *Key,* A. J.] refused to give; but were of opinion, and so directed the jury, that the same was *prima facie* evidence that the will was not legally executed.   The defendant excepted.

2.  The defendant then produced a copy of the said will and probat, duly certified, which is as follows: "November 6th, one thousand eight hundred and seven.   In the name of God, Amen.  I, *Thomas Jenkins,* of *Washington* county, of sound disposing mind, but weak in body, do make and ordain this my last will and testament, revoking all heretofore by me made.   I give to the Reverend *Francis Neale,* of *George Town,* two hundred dollars, which I charge my brother to pay him out of the property I leave him.   I give freedom to my white slave *Charity Hutchins.*   All the rest of my property, both landed and personal, lying in *Prince-George's* county, *Maryland,* and the city of *Washington* and *George Town,* I give to my brother *Francis Jenkins,* and his heirs.   I also charge my said brother *Francis Jenkins,* to have my body decently interred.   And I appoint my brother, *Francis Jenkins,* to whom I have left all my property, both real and personal, with the above mentioned exceptions, my sole executor to see this my will carried into effect.

his<br>
Thomas X Jenkins, (L. S.)<br>
mark

Signed, sealed and delivered, in the presence of
*Johnnaz Mountz,*
*Jacob Miller,*
*Hezkh. Berry.*

N. B. I give freedom to *Charity Hutchinson,* on consideration that she pay to my brother *Francis* three dollars per month for the term of three years; also I give freedom to my slave *Rachel.*

District of *Columbia, Washington* county, viz.   On the 23d day of November, in the year 1807, came *John Mountz, Jacob Miller* and *Hezekiah Berry,* the three subscribing witnesses to the annexed and aforegoing last will and testament of *Thomas Jenkins,* late of *Washington* county, deceased, and

made oath that they saw *Thomas Jenkins,* the said testator, put his mark to the said will, and the reverend *William Matthews* sign his name for him at his request and in his presence, the said *Jenkins* sitting in his bed, and having no convenience there for writing; that they heard the said testator publish, pronounce and declare, the aforegoing and annexed, to be his last will and testament. That at the time of so doing the testator was, to the best of their apprehension, of sound and disposing mind, memory and understanding. That they, the deponents, severally subscribed their names as witnesses to the same, at the request of the said testator, and in presence of each other. After the testator had set his mark to the will, Mr. *Matthews* requested them to sign it. The testator replied, "do gentlemen, go out to the next room and sign," &c. They accordingly went into the next room, and there signed their names, but the will was immediately taken back to the testator. And the said *Hezekiah Berry* deposeth, that he heard the reverend Mr. *Matthews* reading the same to him. They further depose, that the *N. B.* on the back was written by the reverend Mr. *Matthews,* before the testator put his name to this will, and before they attested. The reverend *William Matthews* being duly sworn saith, that after the will had been signed as aforesaid, he immediately carried the same back to the testator, and read it to him, informing him that the persons above named had witnessed it, shewing him at the same time their handwriting, at which the deceased nodded his head by way of assent, appeared quite satisfied, and he thinks the testator added "well," or "very well." The defendant then upon this evidence, and also that stated in the first exception, prayed the court to instruct the jury, that if from the evidence the jury are of opinion that the situation of the witnesses and the testator, at the time of the attestation, was such that the testator might have seen the witnesses subscribe as such, the execution of the will was proper, although the testator did not actually see the witnesses subscribe their names; otherwise not. This instruction the court gave. The plaintiff excepted.

3. The defendant then upon all the evidence, prayed the court to instruct the jury, that if they believed from such evidence, that

·after the witnesses to the will had attested and subscribed it in the adjoining room, at the request of the testator, that the will was then ·carried back to the testator and read to him, and he informed that the persons named as witnesses had witnessed, and was shewn at the same time their handwriting, at which he nodded his head by way of assent, and appeared quite satisfied, and the witness (thinks) added "well" or "very well," that then they must find a verdict for the defendant; or that this evidence furnished presumptive proof of a compliance with the requisites of the statute, November 1798, chapter 101. This instruction the court refused to give. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued at June term last before BUCHANAN, Ch. J. and EARLE, MARTIN, STEPHEN, and ARCHER, J.

*Magruder,* for the Appellant, contended—1. Upon the *first* bill of exceptions—that the court below erred in saying that the testimony was *prima facie* evidence that the will was not legally executed; and also insisted that the testimony of *John J. Stull* was not admissible. He cited *Bowie* vs. *O'Neale et al. Lessee,* 5 *Harr. & Johns.* 226.

2. Upon the *third* bill of exceptions he contended—that the testimony therein stated did furnish presumptive evidence of a compliance with the requisites of the statute.

*F. S. Key,* for the Appellee, referred to *Wood vs. Davis,* 7 *Cranch,* 271, as to the conclusiveness of a verdict and judgment.

*Curia adv. vult.*

STEPHEN, J. at this term delivered the opinion of the court. This action of ejectment was instituted in the court below for an undivided third part of a tract of land called *What you Please.* Defence was taken upon title. The lessor of the plaintiff claiming as heir at law of *Thomas Jenkins,* and the defendant under an instrument of writing alleged to be his last will and testament; and the sole question which appears to have arisen in the court ·below, related to the due execution of said will, according to the formalities prescribed by the statute of

frauds and perjuries. Upon this point *three* bills of exception appear to have been taken in the court below, only the *first* and *third* of which are before this court, for their review and adjudication, upon the appeal prosecuted by the appellant. The opinion contained in the *second* bill of exceptions is not appealed from, and is only before this court by the agreement of the parties, as furnishing the testimony upon which the opinion of the court was prayed and given in the *third* bill of exceptions. The whole of the testimony which went to the jury upon the trial of this case, was admitted by the consent of the parties, and such consent obviates any objection which might otherwise have been made to it as being exceptionable in point of law. This court are of opinion, that the court below did right in refusing the prayer of the plaintiff, that the defendant was precluded from giving evidence to prove the due execution of the will. The conclusion of law deduced by the court from the facts so given in evidence, that the same were *prima facie* evidence that the will was not legally executed, is believed by this court to be correct.

It is the opinion of this court, that there is no error in the opinion of the court below expressed in the *third* bill of exceptions, because the evidence, so far from warranting a presumption that the formalities of the law had been complied with, in reference to the execution of last wills and testaments, furnished very strong grounds from which a contrary inference might be drawn. It is true it is not essential that a testator should actually see the witnesses attest his will, but it is necessary that he should be in a situation which would give him the capacity of doing so if he should desire it. *Russell & Lux vs. Falls,* 3 *Harr. & M'Hen.* 457.

JUDGMENT AFFIRMED.